The Honorable David Evans State Representative P.O. Box 856 Searcy, AR 72145-0856
Dear Representative Evans:
I am writing in response to various question submitted through private counsel by the Assistant General Manager of the Searcy Water Sewer System regarding the reasonableness of certain facilities inspections requested by the Arkansas Department of Environmental Quality. Counsel reports the following background:
 Earlier this year, a problem developed with representatives of the Arkansas Department of Environmental Quality making a surprise inspection on the Searcy Water Sewer System and demand[ing] the involvement of Assistant General Manager Dan Dawson who was otherwise tied up with other duties at that particular time. Dan Dawson sent me a letter back in May of this year outlining the problem and the fact that the permit issued to the Searcy Water Sewer System indicates that inspection can be conducted at all reasonable times. However, there are times as did occur earlier this year where the people involved with the Searcy Water Sewer System operations cannot be immediately available for the inspectors from ADEQ.
 Another situation has recently occurred again inconveniencing some of the employees of the Searcy Water Sewer System on short notice by calling in the afternoon and expecting various people to be available the next morning.
With respect to the first of these ADEQ inspection requests, Mr. Dawson reported to counsel:
 This has come about as a result of a visit from two Arkansas Department of Environmental Quality (ADEQ) inspectors to our premises yesterday. They arrived unannounced and unscheduled for a Pretreatment Compliance Inspection (PCI), and we were unable to immediately attend to them due to the fact that the only individuals within our organization that could have helped them were part of a previously scheduled meeting addressing another EPA mandated matter. This is the first time in recent memory that ADEQ inspectors have arrived at our site unannounced to conduct a PCI. Usually PCIs are scheduled in advance because only certain individuals within our organization have the specialized working knowledge of the Industrial Pretreatment Program, and it is helpful to be certain that these individuals will be on hand for the inspection. By comparison, we are subject to other types of inspections at any time from ADEQ, such as a Compliance Evaluation Inspection (CEI). This type of inspection focuses primarily on the plant operations, and since our facility is staffed 24 hours per day, we can accommodate such an inspection unannounced at any time.
You have further supplied me with a copy of National Pollutant Discharge Elimination System Permit No. AR0021601, which contains the following provisions regarding inspections of the Searcy Water Sewer System:
 The permittee shall allow the Director, or an authorized representative, upon the presentation of credentials and other documents as may be required by law, to:
 a. Enter upon the permittee's premises where a regulated facility or activity is located or conducted, or where records must be kept under the conditions of this permit;
 b. Have access to and copy, at reasonable times, any records that must be kept under the conditions of this permit;
 c. Inspect at reasonable times any facilities, equipment (including monitoring and control equipment), practices, or operations regulated or required under this permit; and
 d. Sample, inspect or monitor at reasonable times, for the purposes of assuring permit compliance or as otherwise authorized by the Clean Water Act, any substances or parameters at any location.
(Emphases added.) The permit at no point defines the highlighted phrase "at reasonable times."
Against this backdrop, you have posed the following questions:
 1. Is it "reasonable" for Arkansas Department of Environmental Quality (ADEQ) inspectors to conduct an unannounced Pretreatment Compliance Inspection (PCI) when they know that only certain individuals within an organization such as the Searcy Water and Sewer System (SWSS) can effectively address the concerns of the inspection?
 2. Is it "reasonable" for ADEQ inspectors to expect SWSS staff to be inconvenienced just so that the state officials will not be inconvenienced?
 3. Is it "reasonable" for ADEQ inspectors to expect SWSS staff to set aside meetings and other work that has been scheduled weeks in advance, on matters that are just as mandated by EPA regulations, just to accommodate their unannounced plans?
 4. What is the definition of "reasonable time," as that phrase is used in SWSS's NPDES Permit regarding inspection activities? How does the definition of "reasonable time" come into play when specific personnel are on scheduled vacation, sick leave, or out of town on official utility business?
RESPONSE
I regret to say that I am unable to answer these questions beyond noting that determining whether an ADEQ inspection request was "reasonable" will entail conducting a factual inquiry into all of the circumstances attending the request. For instance, based upon the factual recitation recited above, it would appear that circumstances warrant applying different protocols to a Pretreatment Compliance Inspection, on the one hand, and to a Compliance Evaluation Inspection, on the other. However, I am neither equipped nor authorized to opine as to whether this distinction is warranted and, if so, as to precisely what protocols should apply in any particular instance. Only an agency charged with the authority to do so can determine if and when unannounced surprise visits by ADEQ inspectors might be warranted.
Judging by the described facts, it would appear that cooperation between the agencies involved has been less than ideal. Although I can opine that such cooperation is highly to be desired, I cannot speculate as to what conduct would qualify as "unreasonable" under the applicable standard. I am sorry I could not be of further assistance in this matter.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh